```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

William Garcia,                :    CIVIL ACTION
                               :    NO. 19-3184
       Plaintiff,              :
                               :
   v.                          :
                               :
Vertical Screen, Inc.,         :
                               :
       Defendant.              :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              May 22, 2020

## I.   INTRODUCTION

Vertical Screen asserts counterclaims against William Garcia, an employee that sued it for an allegedly discriminatory termination, for breach of a confidentiality agreement and violations of trade secrets statutes. Only the counterclaims are the subject of the motion to dismiss before the Court. The counterclaims are not barred by the compulsory counterclaim rule because they are not related to Garcia's separate FLSA action against Vertical Screen. And the trade secrets counterclaims are plausibly alleged because the facts alleged allow a plausible inference that Garcia misappropriated information that is valuable and secret. Thus, the motion to dismiss will be denied.

## II.  BACKGROUND

William Garcia was an employee of Vertical Screen, an applicant screening firm, for five years, until he was terminated on October 2, 2018. Garcia is also a lead plaintiff

in a case against Vertical Screen before Judge DuBois, involving a putative collective action alleging FLSA overtime violations.

In the case presently before the Court, Garcia alleges employment discrimination and retaliation in his termination. He alleges that he suffers from disabilities, including lupus, arthritis, and anxiety. He also alleges that after he told his supervisors about his disabilities, they openly discussed his disabilities with others. And he claims a co-worker falsely told other employees that she had sexual relations with him. Garcia was terminated one week after submitting various complaints to Vertical Screen—including that his supervisors were openly discussing his disabilities and that his co-worker sexually harassed him—and requesting FMLA leave. Thus, he brings claims under the ADA, the FMLA, Title VII, and the PWCL.

But, according to Vertical Screen, Garcia was terminated because he violated the company's confidentiality policy. And on the basis of Garcia's alleged violation of the confidentiality policy, Vertical Screen asserts three counterclaims: breach of contract, violation of Defend Trade Secrets Act, and violation of Pennsylvania Uniform Trade Secrets Act. These claims are based on Garcia's sending, from his work email to his personal email, a message containing allegedly confidential and proprietary documents and information. According to Vertical Screen, the documents and information included information about

2

its cutting-edge workflow management system, its employees, its processes and programs, and its clients' applicants.

Vertical Screen alleges that by taking the documents and information, Garcia misappropriated trade secrets. It alleges that Garcia took the documents and information by improper means, without right or privilege. And it alleges that it has taken steps—such as using password protection, training employees, and limiting file access—to protect this information. Last, it alleges that the nature of the information—i.e., processes and systems it uses in the applicant screening business—makes it valuable.

Garcia moved to dismiss the counterclaims for failure to state a claim. The Court denied the motion as to the breach of contract counterclaim but granted the motion as to the trade secrets counterclaims, reasoning that Vertical Screen had not plausibly alleged a trade secret.

Now, after Vertical Screen has amended its counterclaims, Garcia once again moves to dismiss the counterclaims—this time arguing that all claims are barred because they were unasserted compulsory counterclaims in the FLSA action before Judge DuBois, and that the trade secrets claims still fail to state a claim despite the amendments.

### III. LEGAL STANDARD

**A.  Compulsory Counterclaim**

The Federal Rules provide that "[a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1). Because the rule provides that such a counterclaim must be asserted, it is compulsory, and "[a] compulsory counterclaim not raised in the first action is barred in subsequent litigation." Bristol Farmers Mkt. & Auction Co. v. Arlen Realty & Dev. Corp., 589 F.2d 1214, 1220 (3d Cir. 1978). And courts construe this compulsory counterclaim rule "liberally to promote judicial economy." Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc., 292 F.3d 384, 389 (3d Cir. 2002).

**B.  Failure to State a Claim**

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (internal quotation marks removed). To withstand a motion to dismiss, the

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit

5

Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Garcia argues that, in an action alleging misappropriation of trade secrets, Rule 9(b) applies and requires a higher pleading standard. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Although Rule 9(b) applies to a claim that involves fraudulent conduct even where the claim itself is not a fraud claim, Rule 9(b) does not apply where the claim falls short of alleging deception. Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co., 631 F.3d 436, 446 (7th Cir. 2011). The counterclaims here do not make any allegations of misrepresentation or deception, so Rule 9(b) does not apply.[1]

---

[1] See Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 21-22 (1st Cir. 2017) ("Rule 9(b)'s requirements apply to both general claims of fraud and also to 'associated claims,' such as Mulder's, 'where the core allegations effectively charge fraud.'" (quoting N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009))); Alpha Pro Tech, Inc. v. VWR Int'l LLC, 984 F. Supp. 2d 425, 436 (E.D. Pa. 2013) ("[A] claim for misappropriation of trade secrets need not be pleaded with particularity." (quoting Ctr. Pointe Sleep Assocs., LLC v. Panian, No. 08-cv-1168, 2009 WL 789979, at *3 (W.D. Pa. Mar. 18, 2009))); cf. Foam Supplies, Inc. v. The Dow Chem. Co., No. 05-cv-1772, 2006 WL 2225392, at *14 (E.D. Mo. Aug. 2, 2006) ("While trade secret claims are typically governed by Rule 8 notice pleading requirements . . . . where a plaintiff alleges fraud as the improper means by which a party misappropriated trade secrets, Rule 9(b)'s particularity requirement applies." (citations omitted)).

**IV. DISCUSSION**

The motion to dismiss will be denied because the counterclaims are not barred by the compulsory counterclaim rule and the counterclaims adequately state a claim.

**A.   Compulsory Counterclaim Rule**

The counterclaims are not compulsory counterclaims to the FLSA action because there is no logical relationship between the material facts or the legal issues in the FLSA claim and these counterclaims.

From the text of the rule, "a counterclaim that arises out of the transaction or occurrence that is the subject matter of an opposing party's claim is a 'compulsory counterclaim.'" Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631, 633 (3d Cir. 1961). But this transaction or occurrence requirement does not require identical issues in the claim and counterclaim, instead "the relevant inquiry is whether the counterclaim 'bears a logical relationship to an opposing party's claim.'" Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc., 292 F.3d 384, 389 (3d Cir. 2002) (quoting Xerox Corp. v. SCM Corp., 576 F.2d 1057, 1059 (3d Cir. 1978)). And there is a logical relationship where pursuing the claims separately would lead to "a substantial duplication of effort and time," as occurs where the "claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same

7

basic controversy between the parties." Id. at 389-90 (quoting Xerox Corp., 576 F.2d at 1059).

That counterclaims "arise from the same employment relationship" that gave rise to the original claims is by itself "insufficient to render the counterclaims compulsory." Stewart v. Lamar Advert. of Penn LLC, No. 03-cv-2690, 2004 WL 90078, at *2 (E.D. Pa. Jan. 14, 2004). But a counterclaim arising from the same employment relationship may be a compulsory counterclaim where the original claims and the counterclaim "are primarily concerned with the scope of the parties' permissible actions under the same employment agreement during the same time period and are interconnected." Vukich v. Nationwide Mut. Ins. Co., 68 F. App'x 317, 319 (3d Cir. 2003) (nonprecedential).

Although the FLSA claims and Vertical Screen's counterclaims arise from the same employment agreement and relationship, they deal with two unrelated aspects of Garcia's employment. Garcia argues that Vertical Screen's counterclaims are compulsory counterclaims to the FLSA action because the counterclaims are based on the confidentiality agreement, which is part of the same employment contract that governs the wage disputes at issue in the FLSA action.[2] But the factual issues,

---

[2] See Edwards v. Storage Tech. Corp., No. 97-cv-5427, 1999 WL 33505545, at *3 (E.D. Pa. Mar. 1, 1999) ("The claim of a breach of that contract and the defense and counterclaim of fraud in entering that contract arise from the same basic controversy, that employment relationship.").

the legal issues, and the basic controversy in the FLSA action are not related to those in these counterclaims. In the FLSA claim, the issues involve Garcia's compensation. In the counterclaims here, the issues involve Garcia's email to himself containing allegedly confidential information. And Garcia does not articulate how proceeding with the FLSA claim and these counterclaims in separate actions would result in the duplication of efforts that the compulsory counterclaim rule intends to prevent.

In sum, judicial economy would not be undermined if the litigation of the wage controversy is conducted separately from the litigation of the misappropriation controversy.

### B.   Misappropriation of Trade Secrets Counterclaims Pleading

These counterclaims are adequately pleaded because there are sufficient facts alleged to allow a plausible inference that Garcia misappropriated trade secrets. And that Garcia asserts immunity from liability under the trade secrets statutes does not defeat the counterclaims at this stage.

### 1.   Adequate Pleading

The facts alleged about Garcia's actions in obtaining the information and the facts alleged about the content of the information lead to a plausible inference that Garcia acquired valuable and secret information by improper means. The Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836, and the Pennsylvania

9

Uniform Trade Secrets Act (PUTSA), 12 Pa. Cons. Stat. Ann. § 5302, both define misappropriation of a trade secret as either (1) acquisition of a trade secret with reason to know that it was acquired by improper means or (2) disclosure or use of a trade secret without consent. Teva Pharm. USA, Inc. v. Sandhu, 291 F. Supp. 3d 659, 674 (E.D. Pa. 2018); Alpha Pro Tech, Inc. v. VWR Int'l LLC, 984 F. Supp. 2d 425, 440 (E.D. Pa. 2013). The DTSA and the PUTSA both define acquisition by improper means as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by . . . theft, bribery, misrepresentation, [or] breach." 18 U.S.C. § 1839 (5)–(6); 12 Pa. Cons. Stat. Ann. § 5302.

A trade secret is "information that: (a) the owner has taken reasonable means to keep secret; (b) derives independent economic value, actual or potential, from being kept secret; (c) is not readily ascertainable by proper means; and (d) others who cannot readily access it would obtain economic value from its disclosure or use." Teva Pharm. USA, Inc., 291 F. Supp. 3d at 675 (citing 18 U.S.C. § 1839(3); 12 Pa. Const. Stat. Ann. § 5302). And whether information is considered a trade secret depends on six factors: (1) existence of knowledge of the information outside of the business, (2) extent of knowledge of the information within the business, (3) measures taken to protect the alleged secret, (4) the information's value, (5) the

10

amount of resources used in creating the information, and (6) the difficulty of legitimately acquiring or duplicating the information. Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 (3d Cir. 2010). Although a complaint does not need to disclose trade secrets to state a claim, "[i]t is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated." Mission Measurement Corp. v. Blackbaud, Inc., 216 F. Supp. 3d 915, 921 (N.D. Ill. 2016) (alteration in original) (quoting Composite Marine Propellers, Inc. v. Van Der Woude, 962 F.2d 1263, 1266 (7th Cir. 1992)).

Vertical Screen has adequately pleaded that some information was misappropriated through acquisition by improper means. The facts surrounding Garcia's acquisition of the information—in particular, emailing the information to his personal computer one week before he was terminated—give rise to the inference that there is a plausible claim that the information was acquired by improper means. This conduct is consistent with an inference of acquisition through theft or at least through breach of the confidentiality agreement.

Vertical Screen has also adequately pleaded that the information Garcia took contains a trade secret. It alleges that the information includes the search process used to provide screening services, two specific implementations of this search

11

process, and the internally-developed workflow management system.[3] Further, it alleges that it has taken steps—such as using password protection, training employees, and limiting file access—to protect this allegedly misappropriated information. These allegations permit a reasonable inference that some of the information Garcia took was both valuable and secret.[4]

## 2. Immunity

Garcia's argument that the trade secrets claims should be dismissed because he has immunity is an affirmative defense, and it is premature at the motion to dismiss stage. Garcia argues that he is immune under the trade secrets statutes because he gave the documents that he allegedly misappropriated to his attorneys to prosecute suspected FLSA violations.

---

[3] See Pictometry Int'l Corp. v. Air Am. Flight Ctr., LLC, 394 F. Supp. 3d 320, 333 (W.D.N.Y. 2019) (holding that "policies and procedures for screening and training pilots, information about how Air America creates and executes its flight paths, the identities of Air America's independent contractor pilots and mechanics, and Air America's internal aircraft maintenance schedules" plausibly contain trade secrets because the court could not "say as a matter of law that these identified alleged trade secrets amount to nothing more than general 'know how'").

[4] The confidentiality agreement also supports finding that trade secrets are involved here. See Iron Age Corp. v. Dvorak, 880 A.2d 657, 664 (Pa. Super. Ct. 2005) ("A non-disclosure covenant does not create a per se right to protection, but is merely indicative of the parties' agreement as to the information's confidential nature." (citation omitted)). This is true even if Vertical Screen did not include the DTSA-required notice in the confidentiality agreement because the lack of such a notice is at best minimally probative of whether the information protected by the confidentiality agreement is a trade secret. And to the extent Garcia argues the trade secret counterclaims are barred by the lack of such a notice, this argument fails because a failure to comply with the notice requirement merely prohibits the recovery of punitive damages and attorney's fees. See 18 U.S.C. § 1833(b)(3)(C) ("If an employer does not comply with the notice requirement in subparagraph (A), the employer may not be awarded exemplary damages or attorney fees . . . .").

But it is well-settled that "immunity is an affirmative defense." Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001). And affirmative defenses may only be decided at the motion to dismiss stage where "the predicate establishing the defense is apparent from the face of the complaint." Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 n.10 (3d Cir. 1978); see Unum Grp. v. Loftus, 220 F. Supp. 3d 143, 147 (D. Mass. 2016) ("While Loftus contends that he is entitled to immunity under the DTSA because he handed Unum's documents over to his attorney to pursue legal action against Unum for alleged unlawful activities, the record lacks facts to support or reject his affirmative defense at this stage of litigation."). Here, Garcia's immunity affirmative defense cannot be established from the face of the counterclaims because "it is not ascertainable from the [counterclaims] whether [Garcia] turned over all of [Vertical Screen]'s documents to his attorney, which documents he took and what information they contained, or whether he used, is using, or plans to use, those documents for any purpose other than investigating a potential violation of law." Unum Grp., 220 F. Supp. 3d at 147.

## V. CONCLUSION

Plaintiff's motion to dismiss will be denied because the counterclaims were not compulsory and are adequately pleaded.

An appropriate Order follows.