IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM GARCIA, | : | CIVIL ACTION |
| | : | NO. 19-3184 |
| Plaintiff | : | |
| v. | : | |
| | : | |
| VERTICAL SCREEN, | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                    March 21, 2022

## TABLE OF CONTENTS

I.   **INTRODUCTION** ............................................... 2

II.  **BACKGROUND** ................................................. 3

III. **LEGAL STANDARD** ............................................. 6

IV.  **DISCUSSION** ................................................. 7

  A.  **Vertical Screen's Motion** ................................. 7

    1.  Discrimination Claims ................................... 8

    2.  Retaliation Claims ..................................... 16

    a. ADA & PHRA Retaliation ................................. 17

    b. FMLA Retaliation ...................................... 18

    c. Title VII Retaliation ................................. 23

    3.  FMLA Interference ...................................... 23

    4.  Failure to Pay Wages under the WPCL .................... 25

    5.  Punitive and Liquidated Damages ....................... 26

  B.  **Vertical Screen's Amended Counterclaims** ................ 27

    1.  Breach of Contract .................................... 28

    2.  Trade Secret Claims under the DTSA and PUTSA .......... 29

  C.  **Garcia's Motion** ....................................... 30

    1.  Breach of Contract .................................... 31

    2.  Misappropriation of Trade Secrets ..................... 32

    3.  Garcia's WPCL Claim ................................... 38

V.   **CONCLUSION** ................................................ 40

I.   **INTRODUCTION**

Plaintiff William Garcia brings this action against his former employer, Defendant Vertical Screen Inc. ("Vertical Screen"), claiming that Vertical Screen discriminated and retaliated against him when it terminated his employment. Garcia asserts claims pursuant to the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), Title VII of the Civil Rights act of 1964 ("Title VII"), and the Pennsylvania Human Relations Act ("PHRA"). Garcia also brings a claim for failure to pay wages owed under Pennsylvania's Wage Payment and Collection Law ("WPCL").

Vertical Screen asserts counterclaims against Garcia for breach of contract and misappropriation of trade secrets. The parties have filed cross motions for summary judgment.

For the reasons set forth below, both motions will be granted in part and denied in part. Specifically, Vertical Screen's motion will be granted as to Garcia's claims under the ADA, the FMLA, Title VII, the PHRA, and as to Garcia's request for punitive damages. It will be denied as to Garcia's WPCL claim and Vertical Screen's counterclaims. Garcia's motion will be granted as to his WPCL claim and as to Vertical Screen's request for exemplary damages and attorneys' fees pursuant to its trade secret claims and denied as to the remainder of Vertical Screen's counterclaims.

## II.   BACKGROUND[1]

Vertical Screen is one of the world's leading employment applicant screening companies[2] and is headquartered in Warminster, Pennsylvania. Garcia was an employee at Vertical Screen for five years until he was terminated on October 2, 2018.[3] Garcia started as a Public Records Researcher and was later promoted to Public Records Team Leader. As part of his promotion, Garcia's supervisors promised him a $.50/hour raise, which he never received. During the final year of his employment with Vertical Screen, Garcia's supervisors were Katherine Denis, Michael Hanna, Alison Graham, Samuel Twardowski, and Yahne Johnson.

Garcia alleges that he suffered from disabilities during his time at Vertical Screen, including rheumatoid arthritis (originally misdiagnosed as Lupus) and anxiety. As a result of these disabilities, Garcia took periodic time off from work. He further claims that in response to his taking periodic time off, Johnson told him on several occasions that he "shouldn't be

---

[1]    As required at the summary judgment stage, the Court views the facts "in the light most favorable" to the nonmoving party and draws "all reasonable inferences" in that party's favor. Young v. Martin, 801 F.3d 172, 174 n.2 (3d Cir. 2015).

[2]    As a screening company, Vertical Screen contracts with companies to verify the identity, past employment history, education, and relevant background of prospective applicants.

[3]    Garcia is also lead plaintiff in a putative collective action involving FLSA overtime violations that is currently pending before Judge Brody. See Garcia v. Vertical Screen, Inc., No. 18-cv-4718.

calling out," or that Johnson would "take [his] position away from [him]." Pl's Stmt. of Facts ¶ 43, ECF No. 76.

Garcia asserts that he informed Hanna, Graham, and Twardowski of his disabilities. He claims further that after he informed his supervisors of his disabilities, Hanna disclosed that Garcia was disabled to other co-workers. Hanna denies ever disclosing Garcia's medical conditions to anyone other than Marcine Schiehser, Vice President of Human Resources at Vertical Screen, or Twardowski, who was Hanna's direct supervisor.

Garcia also claims that a co-worker falsely told other employees that she and Garcia had a sexual relationship. He felt this was sexual harassment and complained verbally to Twardowski and asked him to communicate the complaint to the company's human resources department.

On September 17, 2018, Garcia requested necessary materials to request FMLA leave from Vertical Screen's human resources department. He did not fill out the paperwork or otherwise submit his FMLA request to Vertical Screen.

On October 2, 2018, Vertical Screen terminated Garcia's employment. Vertical Screen claims that he was terminated because he violated the company's confidentiality policy when he allegedly sent a series of emails, one of which contained a document titled "Courts Tier Training Spreadsheet" (the "Spreadsheet"), from his work email to his personal email

4

account. According to Vertical Screen, the Spreadsheet included information that was not only confidential, but amounted to protectable trade secrets. Several Vertical Screen employees testified that the decision to terminate Garcia was made solely by Tim Gaudreau, the company's chief operating officer. See Gaudreau Dep. at 14:18-20, ECF No. 69-2; Schiehser Dep. at 46:14-17, ECF No. 69-12, Hanna Dep. 33:3-34:22, ECF No. 69-10.

Garcia denies ever sending himself any of the emails in question. According to Vertical Screen's IT Security Analyst Neelay Patel, the company's email security system triggered an alert that Garcia had sent the Spreadsheet, which was at least partially encrypted, to his personal email. See Patel Decl., ECF No. 69-18. A subsequent investigation into the event led Patel to conclude that the Spreadsheet had left the company's servers and had reached Garcia's personal email account. See id. However, Vertical Screen later performed a forensic analysis of Garcia's personal devices and email account and found no trace of the Spreadsheet.

Garcia's Amended Complaint contains five counts: (I) disability discrimination and retaliation in violation of the ADA; (II) interference and retaliation in violation of the FMLA; (III) retaliation in violation of Title VII; (IV) failure to pay wages owed under the WPCL; and (V) discrimination and retaliation in violation of the PHRA.

Vertical Screen asserts three counterclaims against Garcia: (I) breach of contract; (II) violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq. (the "DTSA"); and (III) violation of the Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stat. Ann. § 5301, et. seq. (the "PUTSA").

## III. LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court views the facts in the light most favorable to the nonmoving party. Am. Eagle Outfitters, 584 F.3d at 581. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port

Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing
Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir.
1997)). While the moving party bears the initial burden of
showing the absence of a genuine issue of material fact, meeting
this obligation shifts the burden to the nonmoving party who
must "set forth specific facts showing that there is a genuine
issue for trial." Anderson, 477 U.S. at 250 (quoting Fed. R.
Civ. P. 56(e) (1963)).

When confronted with cross-motions for summary judgment,
"[t]he court must rule on each party's motion on an individual
and separate basis, determining, for each side, whether a
judgment may be entered in accordance with the Rule 56
standard." Schlegel v. Life Ins. Co. of N. Am., 269 F. Supp. 2d
612, 615 n.1 (E.D. Pa. 2003) (alteration in original) (quoting
10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal
Practice & Procedure § 2720 (3d ed. 1998)).

## IV. DISCUSSION

### A.  **Vertical Screen's Motion**

Vertical Screen moves for summary judgment on all Garcia's
claims. Because Garcia fails to meet his burden for each of his
discrimination and retaliation claims as required by McDonnell
Douglas Corp. v. Green, 411 U.S. 792, 800 (1973), the motion
will be granted as to Garcia's claims under the ADA, PHRA, FMLA,
and Title VII. The motion will also be granted as to Garcia's

request for punitive damages, as he has not produced evidence to support any claim under which punitive damages are available. The motion will be denied as it applies to Garcia's WPCL claim.

### 1.   Discrimination Claims Under the ADA & PHRA

In considering claims of employment discrimination where no direct evidence of discrimination exists, courts are informed by the well-rehearsed burden shifting analysis of McDonnell Douglas. The first step of the McDonnell Douglas framework requires a court to ask whether the plaintiff has established a prima facie case of disability discrimination. 411 U.S. at 802. Then, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's termination. Id. And finally, if the employer articulates a legitimate, non-discriminatory reason for the termination, the plaintiff must then "establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action." Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Under the burden-shifting framework, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with

the plaintiff." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 518 (1993) (citing Burdine, 450 U.S. at 253)).

In order to establish a prima facie case of disability discrimination under the ADA & PHRA, a plaintiff must establish that "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of the discrimination." Gaul v. Lucent Tech., 134 F.3d 576, 580 (3d Cir. 1998) (addressing the ADA); Rinehimer v. Cemcolift, 292 F.3d 375, 382 (3d Cir. 2002) ("The PHRA is basically the same as the ADA in relevant aspects and Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts.") (internal quotations omitted).

Vertical Screen first argues that Garcia is not disabled within the meaning of the ADA. The ADA defines "disability" to include "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breaching, learning, reading, concentrating, thinking, communicating, and working." Id. at § 12102(2)(A). Congress also provides that "[t]he definition of disability in this chapter

shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." Id. at § 12102(4)(A).[4] Whether an individual is substantially limited in the performance of a major life activity is a question for a jury unless there is no evidence on the record from which a reasonable jury could conclude the plaintiff was substantially limited. See Sowell v. Kelly Servs., Inc., 139 F. Supp. 3d 684, 698 (E.D. Pa. 2015).

Garcia has established that he is disabled under the ADA and PHRA for the purposes of this motion. He testified in his deposition that his anxiety causes him difficulty in getting out of bed and getting to work. He further testified that he occasionally had missed work due to his disabilities. This fits into the broad definition of disability under the ADA (as modified by the ADA Amendments Act of 2008, 42 U.S.C. § 12101, et seq. (the "ADAAA")), and a reasonable jury could conclude that he was substantially limited in the performance of major life activities based on the evidence presented. See Estate of Murray v. UHS of Fairmount, Inc., No. 10-cv-2561, 2011 WL 5449364, at *8 (E.D. Pa. Nov. 10, 2011) (noting that the record was "incredibly sparse" as to whether the plaintiff's disability substantially limited major life activities, but refusing to

---

[4]    These requirements apply equally to Garcia's claim for disability discrimination under the PHRA. See Rinehimer, 292 F.3d at 382.

grant summary judgment on those grounds due to the "stated intent of the ADAAA"). Vertical Screen cites a number of authorities for the proposition that Garcia has not established that he is disabled under the ADA, but they were nearly all decided prior to the passing of the ADAAA in 2008,[5] which directed courts to apply a broader definition of disability in considering claims brought under the ADA. Based on the evidence presented, Garcia has established the first element of his prima facie case under the ADA and PHRA.

Vertical Screen next argues that Garcia has not established the third element of his prima facie case under the ADA and PHRA: that his disability was the cause of his termination. In employment discrimination cases, courts look to several factors in determining whether a plaintiff has established causation, including (1) temporal proximity between a protected activity and the adverse employment action, (2) whether there is a "pattern of antagonism" following protected conduct, and (3) whether the record, taken as a whole, raises an inference of causation. See Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997); Abdul-Latif v. County of Lancaster, 990 F.

---

[5]     The one (unpublished) case cited by Vertical Screen that was decided after the passing of the ADAAA, Lackey v. Heart of Lancaster Reg'l Med. Ctr., 704 F. App'x 41 (3d Cir. 2017), is also inapposite because the plaintiff in that case sought to establish that she had a disability by arguing only that her employer regarded her as disabled. Lackey, 704 F. App'x at 48-49. The Lackey court therefore focused on the employee's perception of the plaintiff's medical conditions rather than whether the plaintiff had established that her condition substantially limited a major life activity.

Supp. 2d 517, 530 (E.D. Pa. 2014) (citing <u>Farrell v. Planters</u> <u>Lifesavers Co.</u>, 206 F.3d 271, 280 (3d Cir. 2000)).

Garcia essentially offers two arguments to support his claim that he was fired because of his disability. First, he avers that his supervisors at Vertical Screen exhibited a pattern of antagonism against him after he disclosed his medical conditions and began taking time off to attend medical appointments, which pattern specifically included revealing his private health information to others and exhibiting annoyance with him taking time away from work. And finally, he argues that Vertical Screen's disparate treatment of similarly situated employees (i.e., employees who also sent confidential documents to their personal email addresses) raises an inference that his disabilities motivated his termination.

Garcia's first argument is unconvincing because he does not point to any definitive pattern of antagonism by Vertical Screen employees who would have been involved in the decision to fire him. Garcia testified in his deposition that he felt threatened by Yahne Johnson, one of his supervisors, when he took time off to care for his disabilities. Garcia claims that Johnson told him, inter alia, that he "shouldn't be calling out," or that Johnson would "take [his] position away from [him]." Garcia Dep. 262:2-9, ECF No. 76-6. This behavior is certainly antagonistic, but cannot serve as evidence of causation because there is no

evidence to suggest that Johnson played any part in the decision to fire Garcia. Cf. Olson v. General Elec. Astrospace, 101 F.3d 947, 954 (3d Cir. 1996) (reversing summary judgment in a discriminatory hiring case because the district court did not consider representations made by a person "directly involved in the hiring process"); see also Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) (explaining that "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight"). In fact, the evidence presented at this stage suggests that the decision to fire Garcia was made by Gaudreau alone. See Gaudreau Dep. at 14:18-20, ECF No. 69-2; Schiehser Dep. at 46:14-17, ECF No. 69-12; Hanna Dep. 33:3-34:22, ECF No. 69-10.

Moreover, Plaintiff has not established why Hanna's alleged disclosure of his disability to Denis and Johnson, who were both supervisors, resulted in a pattern of antagonism that would suggest Garcia was terminated because he was disabled. To the contrary, Garcia's deposition testimony suggests that Hanna informed Johnson of Garcia's anxiety so that Johnson could better accommodate him by reducing his workload, if necessary. See Garcia Dep. at 333:4-7, ECF No. 76-6 ("Yahne Johnson came to me and said, Mike [Hanna] told me about your anxiety. If you need me to reduce some of your workload, I can."). Therefore, while the parties dispute whether Hanna actually did disclose

13

Plaintiff's disability to others, this is not a material fact because even if he did, this would still be insufficient to support an inference that Garcia's termination was caused by his disability.

Garcia's second causation argument—that he was treated differently than similarly situated employees—also falls short. Garcia identifies a Vertical Screen employee named Natasha James who sent confidential information to her personal email address but was given a written warning instead of being terminated. In order to rely on this incident as evidence of discrimination, Garcia "must establish that [James'] acts 'were of comparable seriousness to his own infraction.'" Anderson v. Haverford Coll., 868 F. Supp. 741, 744 (E.D. Pa. 1994) (quoting Lanear v. Safeway Grocery, 843 F.2d 298, 301 (8th Cir. 1988)).

But here, Vertical Screen has articulated a clear difference between James' conduct and Garcia's. The information James sent to herself was a non-encrypted list of applicant names that did not "compromise[] how [Vertical Screen's] systems functioned or allowed access to [their] systems in any way." Gaudreau Dep. at 138:9-15, ECF No. 69-2; see also James Dep. at 70:9-11, ECF No. 69-19. In contrast, Garcia allegedly sent himself an encrypted spreadsheet which contained information that gave insight into the Vertical Screen's "infrastructure" and how it "managed [its] workflow." Gaudreau Dep. at 137:1-14;

14

see also Patel Decl. ¶ 3, ECF No. 69-18 (stating that Patel received a security alert on September 27, 2018, that Garcia had sent an encrypted document to his personal email account); Pl's Resp. to Def's Stmt. of Facts ¶ 43, ECF No. 76-2 (admitting that, according to the Cyber Security Incident Report associated with Garcia's termination, the Spreadsheet was encrypted).

As further evidence that Garcia was not treated differently than other employees who carried out similar conduct, Vertical Screen points to two other researchers that it terminated for sending similar confidential business and proprietary information beyond company servers: (1) Arondai McGriff, who was terminated for emailing himself a password-protected spreadsheet containing Vertical Screen's financial account information; and (2) Olivia Scialanca, who sent herself client contact information, applicant names, employee names, and information regarding Vertical Screen's internal processes and procedures. See Gaudreau Dep. at 136:22-137:14. In other words, the evidence before the Court suggests that Vertical Screen's decision making in firing Garcia was consistent with its treatment of other employees; i.e., employees were fired when they shared confidential information that contained insight into the company's proprietary information or internal workflow systems. This class of employees includes Scialanca, McGriff, and Garcia, and excludes James. The Court consequently finds that Garcia has

15

not shown that he was treated disparately from similarly situated employees.

Because Garcia has not produced evidence that he was terminated because of his disability, he fails to establish a prima facie claim of discrimination under the ADA or PHRA. The Court will accordingly grant Vertical Screen's motion for summary judgment as to these claims.

And as Garcia has failed to state a prima facie claim of discrimination under the ADA or PHRA, the Court need not consider whether Vertical Screen's proffered reason for terminating him was a pretext for disability discrimination.

### 2. Retaliation Claims Under the ADA, PHRA, FMLA & Title VII

Garcia's retaliation claims are also evaluated under the McDonnell Douglas burden-shifting framework as set forth above. See Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 257 (3d Cir. 2017).

Garcia brings retaliation claims under the ADA, PHRA,[6] FMLA, and Title VII. The elements of retaliation under these four statutes are essentially the same: in order to state a prima facie case, a plaintiff must show that (1) he engaged in a protected activity (such as taking FMLA qualifying leave,

---

[6]     As "the PHRA is basically the same as the ADA in relevant aspects and Pennsylvania courts generally interpret the PHRA in accord with [the ADA]," the elements of a retaliation claim under the PHRA and ADA are the same. Rinehimer, 292 F.3d at 382.

16

requesting a reasonable accommodation under the ADA, or making a complaint regarding an activity prohibited by Title VII), (2) he suffered an adverse employment decision, and (3) there was a causal connection between the protected activity and the adverse employment decision. See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004) (stating the elements of an FMLA retaliation claim); Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997) (stating the elements of an ADA and Title VII retaliation claim).

### a.   ADA & PHRA Retaliation

Garcia claims that he engaged in protected conduct under the ADA and PHRA when he complained to management about Hanna's unauthorized disclosure of his disability.[7] However, even if this is true, his prima facie claim for retaliation under the ADA fails at the causation prong. Garcia advances no argument that would link his complaint to management to his termination. Instead, he merely asserts that the Court should infer a causal link here because his supervisors were aware that he had made the complaint. The Court finds that asserting Defendant's mere

---

[7]      Garcia also claims that his requests for intermittent leave were a protected activity under the ADA, but he appears to use these same requests for leave as the protected activity for his FMLA retaliation claim. And as courts within the Third Circuit have recognized, "a request for FMLA leave is not alternatively a request for a reasonable accommodation" under the ADA. Capps v. Mondelez Global, LLC, 147 F. Supp. 3d 327, 341 (E.D. Pa. 2015) (quoting Rutt v. City of Reading, Pa., No. 13-cv-4559, 2014 WL 5390428, at *3 (E.D. Pa. Oct. 22, 2014)). Garcia's requests for leave will therefore only be considered with respect to his FMLA claim.

awareness of Garcia's protected activity is not sufficient to
support an inference that he was fired because of that protected
activity. See Krouse, 126 F.3d at 503 ("the mere fact that
adverse employment action occurs after a complaint will
ordinarily be insufficient to satisfy the plaintiff's burden of
demonstrating a causal link between the two events.") (quoting
Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir.
1997)); Parrotta v. PECO Energy Co., 363 F. Supp. 3d 577, 601
(E.D. Pa. 2019) ("To establish the requisite causal connection a
plaintiff must prove either (1) an unusually suggestive temporal
proximity between the protected activity and the alleged
retaliatory action, or (2) an intervening pattern of antagonism
[or other evidence of retaliatory animus] coupled with timing to
establish a causal link.") (quotation marks and citations
omitted).

Because Garcia has failed to produce sufficient evidence of
causation and has therefore not established a prima facie case
of retaliation under the ADA or PHRA, and Vertical Screen's
motion will be granted as to those claims.

### b.  FMLA Retaliation

Whether Garcia can establish causation for the purposes of
his FMLA retaliation claim is a closer case because of the
proximity between his request for FMLA leave and his
termination. See Krouse, 126 F.3d at 503 (suggesting that the

timing of an alleged retaliatory action may allow an inference of causation when the temporal proximity is "unusually suggestive" of a retaliatory motive). However, even assuming Garcia has stated a prima facie case of FMLA retaliation, he still cannot satisfy his burden of production under McDonnell Douglas because the evidence presented does not support a finding that Vertical Screen's reason for terminating him was a pretext for retaliation.

To establish that an employer's justification for termination was merely a pretext for retaliation, a plaintiff must provide evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Burton v. Teflex, Inc., 707 F.3d 417, 427 (3d Cir. 2013) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)). Evidence undermining an employer's proffered reason must be sufficient to "support an inference that the employer did not act for its stated reasons." Sempier v. Johnson & Higgins, 45 F.3d 724, 731 (3d Cir. 1995). A plaintiff can satisfy that burden at the summary judgment stage by "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation for its action "that a reasonable

factfinder could rationally find them 'unworthy of credence.'" Burton, 707 F.3d at 427 (quoting Fuentes, 32 F.3d at 765).

Garcia advances several arguments to support his claim that Vertical Screen's stated reason for terminating him is a pretext, including (1) that the information he allegedly sent himself was not confidential, and thus did not require termination, (2) that other Vertical Screen employees sent work home to themselves in order to work from home but were not disciplined, (3) that there are conflicts in the record that support an inference of pretext, and (4) that the temporal proximity between his request for FMLA leave and his termination suggests his termination was retaliatory.

Garcia's assertion that the information he allegedly emailed to himself was not confidential information is unsupported by the weight of the evidence. The Confidentiality Agreement Garcia signed at the start of his employment defines "Confidential Information" in part as "information concerning the internal organization or business structure of Vertical Screen or the work assignments or capabilities of any Employee, officer and/or employee of Vertical Screen[.]" Confidentiality Agreement § 2.2(vii), ECF No. 69-7. By Garcia's own admission, the Spreadsheet contained a compilation of employee names and the search systems on which they were trained, which falls squarely under the category of Confidential Information that

contains "work assignments or capabilities of any Employee." <u>Id.</u>
at § 2.2(vii).

Garcia's claim that other Vertical Screen employees sent
work home in violation of Vertical Screen's "acceptable use
policy" does nothing to support a finding of pretext. Garcia
does not identify any employees who allegedly sent Vertical
Screen documents home other than James, Scialanca, and McGriff,
all of whom were disciplined for doing so. And as the Court
addressed in connection with the causation prong of Garcia's ADA
and PHRA claims, there is no evidence of any disparate treatment
between these employees.

Garcia next points to two conflicts in the record that he
claims support a finding of pretext: (1) that he has denied
sending any confidential information to his personal email
address; and (2) that Garcia testified that Denis authorized
employees to send work home to themselves, while she denies ever
doing so. However, with respect to the first "conflict," even if
Garcia's assertions that he did not send himself any of the
emails in question is true, Vertical Screen was presented with
overwhelming evidence to the contrary when considering whether
the terminate his employment. <u>See</u> Patel Decl. ¶¶ 3-8, ECF No.
69-18. The issue here is not whether Vertical Screen was "wrong
or mistaken" in deciding to fire Garcia; rather, it is whether
Garcia has presented "evidence contradicting the <u>core facts</u> put

forward by the employer as the legitimate reason for its decision." Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006) (quoting Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005)). And as to the second purported "conflict," even if Denis had authorized certain employees to send work home to themselves, again, the weight of the evidence produced suggests that Vertical Screen acted fairly and consistently with respect to disciplining the identified employees (i.e., Scialanca, McGriff, and Jones) who violated its confidentiality policy. Again, Garcia has not shown that he was treated disparately from other employees who similarly violated Vertical Screen's confidentiality policies.

Finally, the sixteen-day period between Garcia's request for FMLA leave and his termination, standing alone, is not sufficient to support an inference of pretext. See Meneske v. Harrah's Chester Casino & Racetrack, 649 Fed. Appx. 142, 145 (3d Cir. 2016) (holding that a plaintiff who was terminated one week after her most recent request for FMLA leave did not establish pretext without other evidence); Hughes v. City of Bethlehem, 294 Fed. Appx. 701, 704 (3d Cir. 2008) (finding that the proximity between the plaintiff's protected activity and her employer's adverse decision may be sufficient to establish the causation element of her prima facie retaliation claim, but without other supporting evidence, was insufficient to establish

pretext); see also generally Seeger v. Cincinnati Bell Tel. Co.,

LLC, 681 F.3d 274, 285 (6th Cir. 2012) ("[T]emporal proximity

cannot be the sole basis for finding pretext.") (citation

omitted). The evidence before the Court, viewed as a whole,

simply does not support an inference that Vertical Screen's

proffered reason for Garcia's termination was a pretext for

retaliation. Vertical Screen's motion will therefore be granted

as to Garcia's claim for retaliation under the FMLA.

### c.   Title VII Retaliation

As Garcia advances the same "pretext" arguments with

respect to his Title VII retaliation claim as he did for his

FMLA retaliation claim, the preceding analysis applies to bar

his Title VII retaliation claim as well. In sum, Garcia has not

identified "weaknesses, implausibilities, inconsistencies, or

contradictions" that support any inference that Vertical

Screen's stated reason for his termination was a pretext for

retaliation. Burton, 707 F.3d at 427 (quoting Fuentes, 32 F.3d

at 765). Vertical Screen's motion for summary judgment will

therefore also be granted as to Garcia's claims for retaliation

under Title VII.

### 3.   FMLA Interference

"An [FMLA] interference action is not about

discrimination[;] it is only about whether the employer provided

the employee with the entitlements guaranteed by the FMLA."

<u>Callison v. City of Phila.</u>, 430 F.3d 117, 120 (3d Cir. 2005). In order to successfully bring a claim of FMLA interference, a plaintiff must establish the following:

> (1) he or she was an eligible employee under the FMLA, (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

<u>Capps v. Mondelez Global, LLC</u>, 847 F.3d 144, 152 (3d Cir. 2017) (quoting <u>Ross v. Gilhuly</u>, 755 F.3d 185, 191-92 (3d Cir. 2014)).

For the purposes of its motion, Vertical Screen concedes that Garcia has established the first four elements of his interference claim. Accordingly, whether Garcia has established his claim at this stage depends upon whether he has satisfied the final element; namely, whether he was denied benefits to which he was entitled under the FMLA. Garcia's position is that Vertical Screen interfered with his FMLA rights by denying him the opportunity to obtain a certification from his medical provider and complete his FMLA application.

The Third Circuit has instructed that "for an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld." <u>Ross</u>, 755 F.3d at 192 (citing <u>Callison</u>, 430 F.3d at 119). Because Garcia had admittedly not submitted the necessary paperwork to request FMLA benefits, he has not shown that any FMLA benefits to which he was entitled were

actually withheld. Garcia points out that an employee may have an actionable interference claim where an employer takes action that "could chill" an employee's desire to take FMLA leave, Grosso v. Fed. Exp. Corp., 467 F. Supp. 2d 449, 463 (E.D. Pa. 2006) (internal quotation omitted), but does not produce any evidence that Vertical Screen took any such action. Vertical Screen's motion will therefore be granted as to Garcia's FMLA interference claim.

### 4. Failure to Pay Wages under the WPCL

The Pennsylvania Superior Court has instructed that "'[t]o present a wage-payment claim,' the employee must aver a contractual entitlement to 'compensation from wages' and a failure to pay that compensation." Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 954 (Pa. Super. Ct. 2011) (quoting Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 716 (Pa. Super. Ct. 2011)). When there is no formal written employment contract, a plaintiff bringing a WPLC claim "would have to establish, at a minimum, an implied oral contract between the employee and employer." Id. (citing De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003)).

Garcia avers that when he was promoted to team leader in June 2018 he was promised a fifty-cent raise, but he never received that raise. In its motion, Vertical Screen acknowledges that the promises were made, but argues that Garcia was not

25

contractually entitled to it the raise because "there is no evidence that Vertical Screen intended to be bound by these promises, or that the terms of this alleged contract were sufficiently definite." Def's Mot. at 34, ECF No. 66. But this argument is not supported by the relevant law. In any event, even if Vertical Screen somehow did not intend to be bound by the promise, Garcia's supervisors acted as agents of Vertical Screen and had at least apparent authority to promise the five percent raise, which would bind Vertical Screen to comply with the promise. See Revere Press, Inc. v. Blumberg, 246 A.2d 407, 410 (1968) ("Apparent authority is power to bind a principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted."); Apex Fin. Corp. v. Decker, 369 A.2d 483, 485–86 (1976) (an agent acts with apparent authority when "a man of ordinary prudence, diligence and discretion would have a right to believe and would actually believe that the agent possessed the authority he purported to exercise."). Vertical Screen has therefore failed to show it is entitled to summary judgment on Garcia's WPCL claim, so its motion will be denied as to this claim.

### 5.   Punitive and Liquidated Damages

Vertical Screen also moves for summary judgment on the issue of punitive and liquidated damages. The ADA allows for an

26

award of punitive damages. See 42 U.S.C. § 1981a. However, as Garcia's ADA claims do not survive summary judgment, his corresponding request for punitive damages also fails. Furthermore, Garcia points to no authority, and the Court is aware of none, which states that punitive damages are an available remedy under the WPCL. As his WPCL claim is the sole claim that survives this motion, Vertical Screen's motion will be granted as to punitive damages.

However, the WPCL does provide for payment of liquidated damages in certain instances, such was where wages remain unpaid for thirty days beyond the scheduled payday and no good faith dispute over the wage claim exists. See Andrews v. Cross Atlantic Cap. Partners, 158 A.3d 123, 133 (Pa. Super. Ct. 2017) (citing 43 P.S. § 260.10). As Garcia's WPCL claim survives this motion, Vertical Screen's request for summary judgment on the issue of liquidated damages will be denied.

### B.   **Vertical Screen's Amended Counterclaims**

Vertical Screen also moves for summary judgment on its counterclaims for breach of contract and misappropriation of trade secrets under the DTSA and PUTSA. Because there are disputed material facts on the record with respect to each of these claims, the motion will be denied as to Vertical Screen's counterclaims.

1.   **Breach of Contract**

To prevail on a breach of contract claim under Pennsylvania law, a plaintiff must establish "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) (citation omitted). Vertical Screen's counterclaim argues that Garcia breached the Confidentiality Agreement (the "Agreement") he executed when he began his employment.

Vertical Screen argues that Garcia breached the agreement by both sending the information to himself and by failing to return the Spreadsheet to Vertical Screen upon his termination, as required by the Confidentiality Agreement. See id. at § 2.3. However, the issue of whether Garcia actually sent himself the Spreadsheet and whether it remained in his possession for any period of time is disputed by the parties and subject to conflicting evidence on the record. In arguing that Garcia did breach the agreement, Vertical Screen relies upon the declaration of Neelay Patel, an Information Technology Security Analyst for Vertical Screen, who allegedly determined, after an investigation, that the Spreadsheet left Vertical Screen's servers and reached Garcia's personal email account. See Patel Decl. ¶ 7, ECF No. 69-18. In response, Garcia points out that

28

Vertical Screen performed a forensic examination of Garcia's personal devices and found no trace of the information in question. Inquiry into the respective reliability of this conflicting evidence is not appropriately performed by the Court at the summary judgment stage. The issue of whether Garcia breached the Confidentiality Agreement is a disputed fact for trial and Vertical Screen's motion will be denied as to its counterclaim for breach of contract.

### 2. Trade Secret Claims under the DTSA and PUTSA

Vertical Screen next argues that it is entitled to summary judgment on its claims for trade secret misappropriation under both the DTSA[8] and the PUTSA.[9] Both statutes define misappropriation of a trade secret as either (1) acquisition of a trade secret with reason to know that it was acquired by improper means or (2) disclosure or use of a trade secret without consent. Teva Pharm. USA, Inc. v. Sandhu, 291 F. Supp. 3d 659, 674 (E.D. Pa. Jan. 30, 2018); Alpha Pro Tech, Inc. v. VWR Int'l LLC, 984 F. Supp. 2d 425, 440 (E.D. Pa. 2013) (citing 12 Pa. Cons. Stat. § 5302). The statutes both define acquisition by improper means as the "acquisition of a trade secret of another by a person who knows or has reason to know that the

---

[8]     Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq.

[9]     Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stat. Ann. § 5301, et. seq.

trade secret was acquired by . . . theft, bribery, misrepresentation, [or] breach." 18 U.S.C. § 1839(5)-(6); 12 Pa. Cons. Stat. § 5302.

Vertical Screen is not entitled to summary judgment on its trade secret claims because there is a disputed material fact as to whether Garcia actually "misappropriated" or "acquired" the information in question. As noted in the preceding section with respect to its breach of contract claim, there is conflicting evidence on the issue of whether Garcia actually sent or received the Spreadsheet. This disputed material fact precludes summary judgment in Vertical Screen's favor on its trade secret claims.

### C.   **Garcia's Motion**

Garcia moves for summary judgment on Vertical Screen's counterclaims and on his own claim under the WPCL. Because Garcia falls short of establishing that he is entitled to judgment as a matter of law on Vertical Screen's counterclaims for breach of contract and misappropriation of trade secrets, his motion will be denied as to Vertical Screen's counterclaims. However, Garcia has demonstrated that there are no disputed material facts and that he is entitled to judgment as a matter of law on his WPCL claim, so his motion will be granted as to that claim.

### 1.   Breach of Contract

Garcia essentially advances two arguments with respect to Vertical Screen's counterclaim for breach of contract: (1) that he did not breach the Confidentiality Agreement; and (2) that Vertical Screen has failed to establish cognizable damages.

As previously noted, whether Garcia sent or possessed the Spreadsheet is a disputed material fact that cannot be resolved at summary judgment. Garcia also appears to argue in his motion that even if he did send the Spreadsheet to himself, he still would not have breached the agreement because there is no evidence that he sent the information to a third party. But even assuming this is true, the Agreement also requires that an employee return any and all "Confidential Information" to Vertical Screen upon termination, which Garcia admittedly did not do. Therefore, Vertical Screen's breach of contract claim still turns on the disputed material fact of whether the Spreadsheet ever came into Garcia's possession.

Garcia's damages argument is also unconvincing. Because nominal damages are available for breach of contract under Pennsylvania law, courts have refused to grant summary judgment on a breach of contract claim solely because a party has not established damages. See Thorsden v. Iron & Glass Bank, 476 A.2d 928, 931 (Pa. Super. Ct. 1984) (noting that a party who proves breach of contract but shows no resulting damages is entitled to

31

nominal damages, so "[a] grant of summary judgment on the sole basis of absence of provable damages . . . is generally improper"); see also Zeno v. Ford Motor Co., Inc., 480 F. Supp. 2d 825, 834 (Pa. Super. Ct. 1984) ("In light of the law of Pennsylvania allowing nominal damages for breach of contract, summary judgment cannot be granted for failure to show damages.").

Garcia has therefore failed to establish that he is entitled to summary judgment on Vertical Screen's counterclaim for breach of contract.

### 2.   Misappropriation of Trade Secrets

Garcia first argues that he is entitled to summary judgment on Vertical Screen's counterclaims for misappropriation of trade secrets because the data at issue is not a trade secret as a matter of law. Both the DTSA and the PUTSA essentially define a trade secret as information that: "(a) the owner has taken reasonable means to keep secret; (b) derives independent economic value, actual or potential, from being kept secret; (c) is not readily ascertainable by proper means; and (d) others who cannot readily access it would obtain economic value from its disclosure or use." Teva Pharm. USA, Inc. v. Sandhu, 291 F. Supp. 3d 659, 675 (E.D. Pa. Jan. 30, 2018) (first citing 18 U.S.C. § 1839(3) and then citing 12 Pa. Stat. § 5302). Courts consider six factors in determining whether information is a

trade secret: (1) existence of knowledge of the information outside of the business, (2) the extent of knowledge of the information within the business, (3) measures taken to protect the alleged secret, (4) the information's value, (5) the amount of resources used in creating the information, and (6) the difficulty of legitimately acquiring or duplicating the information. Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 (3d Cir. 2010).

Garcia argues that the Spreadsheet is not a trade secret because it essentially consists of a compilation of publicly available data. Because the information is largely publicly available, he argues, knowledge of the information exists widely outside the business, the information is not inherently valuable, and it is easily acquired or duplicated by a potential competitor. Vertical Screen acknowledges that much of the information contained in the Spreadsheet is publicly available, but claims that what makes the Spreadsheet a protectable trade secret is its formatting. It asserts that the Spreadsheet groups jurisdictions in a way that gives Vertical Screen a competitive edge in its industry and outlines its workflow processes. Vertical Screen further argues that the Spreadsheet took "many months" to develop, and would be valuable in the hands of competitors, as they could use the Spreadsheet's formatting to create workflow processes that would rival Vertical Screen's in

efficiency. And finally, Vertical Screen points out that it took efficiency. And finally, Vertical Screen points out that it took efforts to keep the Spreadsheet secure, including by encrypting the file with password protections and requiring its employees to sign confidentiality agreements that prohibited them from sharing it. Viewing the evidence in the light most favorable to the non-moving party, which here is Vertical Screen, a reasonable jury could conclude that the Spreadsheet is a trade secret.

Garcia next argues that even if the Spreadsheet is a trade secret, he is still entitled to summary judgment on these claims because he did not "misappropriate" it as a matter of law. As previously noted, the issue of whether Garcia actually acquired the Spreadsheet is a disputed material fact. Even so, Garcia appears to argue that even if he did acquire the Spreadsheet, he still cannot have "misappropriated" it because he would not have had reason to know it was acquired through "improper means." Teva Pharm. USA, Inc., 291 F. Supp. 3d at 674 (defining "misappropriation" of a trade secret, in part, as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means").

Contrary to Garcia's assertions, the record supports an inference, at this point to be drawn in favor of Vertical Screen as the nonmoving party, that Garcia had reason to know that

sending the Spreadsheet to his personal email constituted acquiring it by improper means. For example, he signed the Confidentiality Agreement, which designated as "confidential" any information "concerning the . . . work assignments or capabilities of any Employee." Confidentiality Agreement § 2.2(vii), ECF No. 69-7. He also signed Vertical Screen's Acceptable Use Policy, which prohibited employees from "sending confidential information to external recipients unless via approved encryption methods." Acceptable Use Policy at 9, ECF No. 69-23. In light of these acknowledgments, the Court cannot find that Garcia did not misappropriate any trade secret as a matter of law.

Garcia next argues that Vertical Screen's PUTSA claim is barred by the gist of the action doctrine. Pennsylvania's "'gist of the action' doctrine provides that an alleged tort claim against a party to a contract, based on the party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations. Bruno v. Erie Ins. Co., 106 A.3d 48, 53 (Pa. 2014).

To support his argument, Garcia cites Wiggins v. Physiologic Assessment Servs., LLC, 141 A.3d 1058, 1064-65 (Del.

Super. Ct. 2016), in which the Superior Court of Delaware
dismissed misappropriation of trade secrets claims as barred by
the gist of the action doctrine because the defendant's conduct
was clearly defined and prohibited by the employment agreement
between the parties. Wiggins is, of course, not binding, as it
is a Delaware state court decision. It is also distinguishable.
The trade secret claims in Wiggins were brought under the common
law rather than under federal and/or state statutes, as they are
here. And courts within this district and elsewhere within the
Third Circuit have suggested that the gist of the action
doctrine does not function to bar claims that seek to enforce a
right created by a federal or state statute. See, e.g., Sproul
Hill Assocs., L.P. v. Newell Rubbermaid Inc., No. 13-cv-4998,
2013 WL 6731976, at *3 (E.D. Pa. Dec. 23, 2013) (declining to
use gist of the action doctrine to bar Pennsylvania state
statutory claims); The Knit With v. Knitting Fever, Inc., Nos.
08-cv-4221, 08-cv-4775, 2009 WL 3427054, at *5-6 (E.D. Pa. Oct.
20, 2009) (declining to apply the doctrine to bar claims under
federal RICO statute); Pittsburgh Logistics Sys., Inc. v.
LaserShip, Inc., No. 18-cv-1382, 2019 WL 2443035, at *9 (W.D.
Pa. Jun. 12, 2019) (declining to dismiss DTSA and PUTSA claims
under the gist of the action doctrine because the statutes
create private rights "that are enforceable in the absence of a
mutual consensus between contracting parties"). Based on this

36

persuasive authority, the Court finds that the gist of the action doctrine does not apply to bar Vertical Screen's counterclaim for misappropriation of trade secrets under the PUTSA.

Garcia next argues that Vertical Screen's trade secret claims fail because there is no evidence that Vertical Screen has sustained any actual damages as a result of the misappropriation. While Garcia is correct that Vertical Screen has not produced any evidence of monetary damages, the counterclaims for misappropriation of trade secrets also seek an injunction prohibiting Garcia from further misappropriation or use of the alleged trade secrets and directing him to destroy or erase confidential documents or information. See Amended Counterclaims at 13, ECF No. 24; see also 18 U.S.C. § 1836(b)(3)(A) (authorizing injunctive relief under the DTSA); 12 Pa. Cons. Stat. § 5303(a) (authorizing injunctive relief under the PUTSA). Again, the issue of whether Garcia misappropriated any trade secret is a disputed material fact that cannot be resolved at summary judgment. However, if Vertical Screen establishes at trial that Garcia did misappropriate its trade secrets, it may be entitled to injunctive relief. The Court accordingly declines to enter summary judgment on Vertical Screen's trade secret claims based on any failure to establish damages at this stage.

Garcia finally argues that he is entitled to at least partial summary judgment on Vertical Screen's DTSA claim to the extent it seeks exemplary damages or attorneys' fees. In order to be awarded exemplary damages or attorney fees under the DTSA, an employer must provide notice of the immunity offered under section 1833(b)(1) of the DTSA, which prohibits an individual from being held liable for disclosure of a trade secret in certain situations not applicable to this action. The Confidentiality Agreement is silent as to this immunity, so Vertical Screen has not complied with DTSA's notice requirement. Vertical Screen is therefore unable to seek exemplary damages or attorney fees pursuant to its DTSA claim, and Garcia's motion will be granted to that extent.

### 3.   Garcia's WPCL Claim

Garcia is entitled to summary judgment on his WPCL claim. He has established at least an implied oral contract for increased wages between him and Vertical Screen and that Vertical Screen did not pay him the promised salary increase. See Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 954 (Pa. Super. Ct. 2011) ("'To present a wage-payment claim,' the employee must aver a contractual entitlement to 'compensation from wages' and a failure to pay that compensation.") (quoting Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 716 (Pa. Super. Ct. 2011)).

Vertical Screen admits that Garcia's supervisors promised the raise and that it did not comply with the promise, but argues in response that the promises did not establish a contract because Garcia should have been aware that additional approval of either Gaudreau or Twardowski was required to confirm the promise of a raise. However, it points to no written policy requiring such approval and no reason that Garcia should have been aware of such a policy. Garcia has therefore established that his supervisors had at least apparent authority to offer him the raise in return for his acceptance of the promotion. This creates a binding contract that is enforceable under the WPCL. See Scully v. US WATS, Inc., 238 F.3d 497, 516-17 (3d Cir. 2001) (noting that the WPCL "establishes a right to enforce payment of wages and compensation that the employer has legally obligated itself to pay") (citation omitted). There are no disputed material facts as to this claim, and no reasonable jury could find that Vertical Screen did not breach an employment contract with Garcia. The Court will accordingly enter summary judgment in favor of Garcia on his WPCL claim.

Garcia also presents a calculation of damages to which he claims he is entitled in connection with his WPCL claim. But because Vertical Screen has not addressed this calculation and because Garcia also requests prejudgment interest, the Court will grant Garcia's motion as to Vertical Screen's liability

under the WPCL only and reserve the issue of damages for the conclusion of the litigation.

V.    **CONCLUSION**

For the reasons stated above, Vertical Screen's motion for summary judgment will be granted as to Garcia's claims under the ADA, PHRA, FMLA, Title VII, and Garcia's request for punitive damages, and denied as to Garcia's WPCL claim and Vertical Screen's counterclaims.

Garcia's motion will be granted as to Vertical Screen's liability under the WPCL and Vertical Screen's request for exemplary damages and attorneys' fees pursuant to its trade secret claims, and denied as to Vertical Screen's breach of contract claim and Garcia's potential liability for misappropriation of trade secrets under the DTSA and PUTSA.

An appropriate order follows.